IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MYRIAH ILES, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) NO. 3:20-cv-00402 |
| v. | ) JUDGE RICHARDSON |
| | ) |
| METROPOLITAN GOVERNMENT OF | ) |
| NASHVILLE AND DAVIDSON | ) |
| COUNTY, et al., | ) |
| | ) |
|     Defendants. | ) |
| | ) |

**MEMORANDUM OPINION**

Pending before the Court is Defendant Metropolitan Government of Nashville and Davidson County's ("Defendant Metro") Motion to Dismiss (Doc. No. 22, "Motion"). Plaintiff has filed a Response (Doc. No. 27). Defendant has filed a Reply (Doc. No. 28). The Motion is ripe for review.

For the reasons discussed, the Court will grant the Motion.

**BACKGROUND[1]**

Plaintiff's Complaint arises from a series of events surrounding her arrest after spending an evening in downtown Nashville with a female friend. While walking to Plaintiff's car, the heel on one her friend's shoes broke, and she asked Plaintiff to carry her. (Doc. No. 1 at 4). Plaintiff, a female police officer, proceeded to carry her friend "piggy-back." (*Id.*). This proved to be difficult, and Plaintiff then began to carry her friend over her shoulder. (*Id.* at 5). Two unknown women

---

[1] The facts set forth herein are set forth in Plaintiff's Complaint and are accepted as true for purposes of the Motion.

1

approached Plaintiff. It appears that one of them conducted herself with some human decency, asking Plaintiff whether her (Plaintiff's) friend was all right. Alas, the other unknown woman did not do likewise, hurling a racial slur Plaintiff's way and telling Plaintiff put her friend down (*Id.*). Evidently rising above this egregious provocation, Plaintiff put her friend down, explained that she was not hurting her friend, and walked away; when the women followed, Plaintiff showed them her police commission ID card. (*Id.*). The two women, now joined by two men, surrounded Plaintiff, and one of the women slapped the card out of Plaintiff's hand. (*Id.*). Plaintiff was pushed to the ground and attempted to call 911 three or four times. (*Id.* at 6). Plaintiff then attempted to sling her arms in order to create some space between her and the group, and one of the men wrestled her to the ground and held her there until the police arrived. (*Id.*). Plaintiff was transported to the hospital and then to jail. (*Id.* at 6-7).

Thereafter, Plaintiff was relieved from active duty. (*Id.* at 7). A detective swore out an arrest warrant for Plaintiff because he had been threatened by another officer with suspension if he did not do so. (*Id.* at 8). No one wished to prosecute, and the charges were dismissed. (*Id.* at 9). Plaintiff was placed back on active duty. (*Id.*). A summary of the events was published on the Internet by Defendant Metro. (*Id.* at 10-11).

Plaintiff brings claims for violations of her Fourth Amendment rights and false light. (*Id.* at 10-11). Defendant Metro has moved to dismiss the claims against it.

## LEGAL STANDARD

For purposes of a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all the factual allegations in the complaint as true, as it has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

2

Case 3:20-cv-00402   Document 36   Filed 11/12/20   Page 2 of 10 PageID #: 142

plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

## DISCUSSION

Defendant argues in its Motion that it is entitled to dismissal on 1) the claims brought against it pursuant to 42 U.S.C. § 1983 ("Section 1983"), and 2) any false light claim. (Doc. No. 22). This encompasses all of the counts in Plaintiff's claims against Metro. (Doc. No. 1). In her Response, Plaintiff states that she does not oppose Defendant's Motion to the extent it seeks dismissal of the Section 1983 claims. (Doc. No. 27 at 8). The Court therefore will dismiss the Section 1983 claims against Defendant Metro. The Court will focus the rest of its discussion on Plaintiff's false light claims. Defendant Metro lodges two primary attacks against Plaintiff's false light claims: 1) that Defendant Metro has immunity, and 2) that this Court should not exercise supplemental jurisdiction. (Doc. No. 22 at 5-6); (Doc. No. 28 at 3-4). Plaintiff argues that Defendant Metro does not have immunity under the GTLA. (Doc. No. 27 at 3).

The crux of Plaintiff's false light claim is encompassed in two paragraphs of her Complaint:[2]

---

[2] Defendant notes in its Motion that the false light claim made in the Complaint is a "passing reference." (Doc. No. 22 at 5). Defendant does not argue that the Complaint is insufficient, instead focusing on the issues of immunity and supplemental jurisdiction. However, in her Reply, Plaintiff provided the Court with a discussion and case law regarding why her Complaint sufficiently pled a tort claim of false light. (Doc. No. 27 at 6-8). The Court will not address this issue, because Defendant does not advance the argument, and, as discussed, the Court finds that the counts against Defendant Metro should be dismissed on other grounds.

4

> A summary of the events were published by Metro (Nashville.gov) on the Internet for all to see, republished and disseminated by various news media and will never be removed from the Internet.
>
> On October 6, 2019, the publication (See Exhibit A attached to the complaint) by Metro, placed Plaintiff in a false light and invaded her privacy. The publication was presented from an angle that would be highly offensive to a reasonable person who could easily conclude that Plaintiff was guilty of the charge when she was not and that certain events took place during the alleged altercation that were not true. The publication was then republished by various news sources on the Internet. The publication by Metro among other things failed to state that the purported victims did not want to prosecute and that the other Defendants in this complaint knew there was no probable cause to charge Plaintiff with Aggravated Assault, a Class C Felony. The publication was performed by employees or agents of Metro in the course or scope of their employment.

(Doc. No. 1 at 10-11). Plaintiff additionally attached an Exhibit to her Complaint with the publication. (Doc. No. 1-2).

Defendant Metro argues that it is protected by governmental immunity that it claims it enjoys under the Tennessee Governmental Tort Liability Act ("GTLA"). The GTLA provides that governmental entities are immune from lawsuits arising from the exercise or discharge of governmental functions, with certain exceptions. Tenn. Code Ann. § 29-20-201. One of these exceptions is that governmental entities are not immune when a plaintiff's injury arises from the negligence of a governmental employee. Tenn. Code Ann. § 29-20-205. However, from this exception, Tenn. Code Ann. § 29-20-205 in turn excepts the following torts: "[f]alse imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, *invasion of right of privacy*, or civil rights." Tenn. Code Ann. § 29-20-201(2) (emphasis added). That is, subsection (2) of Tenn. Code Ann. § 29-20-205 (hereinafter, "Subsection (2)") provides an exception to Tenn. Code Ann. § 29-20-205's exception to sovereign immunity; in other words, where applicable, Subsection (2)'s exception-to-the-exception effectively grants governmental

5

entities sovereign immunity. The parties have different perspectives on whether "invasion of right of privacy" as listed in Subsection (2) includes a false light claim.

Plaintiff counsels the Court that a false light claim is not included in the "invasion of right of privacy" listed in Subsection (2). To support this contention, Plaintiff points the Court to *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73 (Tenn. 2001). There, the Tennessee Supreme Court held that assault and battery, which are not listed in the Subsection (2), were not encompassed therein, due to the maxim "*expressio unius est exclusio alterius*":[3]

> Accordingly, we hold that section 29–20–205 of the GTLA removes immunity for injuries proximately caused by the negligent act or omission of a governmental employee except when the injury arises out of *only those specified torts enumerated in subsection (2).* To immunize all intentional torts would result in an overly broad interpretation of the statute, and there is no indication that the legislature intended such a result.

*Id.* at 84. Plaintiff essentially argues that since Subsection (2) does not specifically mention false light claims, false light claims are not included within the scope of Subsection (2). (Doc. No. 27 at 4).

Plaintiff additionally relies on *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640 (Tenn. 2001). There, the Tennessee Supreme Court answered a certified question from a federal court asking whether Tennessee courts recognize the tort of "false light invasion of privacy." *Id.* at 641. The court concluded that Tennessee recognizes a tort of false light invasion of privacy, as distinct from the tort of defamation. *Id.* at 646, 648. In its opinion, the court relied on William L. Prosser's writings on the invasion of privacy torts:

> The protection of privacy rights are still reflected in current law, owing much to the efforts of Dean William L. Prosser, whose analysis of invasion of privacy resulted in the classification of that tort into four separate causes of action. *See* William L. Prosser, *Privacy*, 48 Calif. L. Rev. 383 (1960); William L. Prosser, *Law of Torts* §

---

[3] This Latin expression is translated essentially as "the express inclusion of one thing excludes other things."

6

> 117 (4th ed. 1971). "To date the law of privacy comprises four distinct interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff 'to be let alone.' " Prosser, *Law of Torts* § 117, at 804. Prosser's four categories consist of the appropriation of one's name or likeness, intrusion upon the seclusion of another, public disclosure of private facts, and placing another in a false light before the public. *Id.*, § 117.

*Id.* at 642. Plaintiff argues that false light is distinct from invasion of privacy, and therefore should be deemed excluded from Subsection (2) because it is not specifically listed therein. But the Court reads Prosser's writings and *West* to mean that false light is a type of invasion-of-privacy tort; though distinct from *other* types of invasion of privacy, it is *itself* a type of "invasion of privacy." That is to say, there are four categories of invasion of privacy torts, and "false light" invasion of privacy is one of them. That is why *West* referred interchangeably to "false light claims" and "false light invasion of privacy claims." *Id.* at 647-48. And that is why *West* stated:

> With respect to the parameters of *the tort of false light*, we conclude that Sections 652F–I of the *Restatement (Second) of Torts* adequately address its limits. Sections 652F and 652G note that absolute and conditional privileges apply to *the invasion of privacy torts*, and we hereby affirm that such privileges previously recognized in Tennessee apply to false light claims.

*Id.* at 648 (emphasis added).

That is also why *West* stated that "only those persons who have been placed in a false light may recover for invasion of their privacy."[4] *Id.* at 648; *see also Restatement (Second) of Torts* (1977) ("One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy . . . ") (quoted

---

[4] This statement suggest that all invasion-of-privacy claims require a showing that plaintiff was placed in a false light. This suggestion may in turn indicate that all invasion-of-privacy claims are (at least in some sense) false light claims; if so, one may wonder whether there really are (three) other categories of invasion-of-privacy torts other than false light invasion of privacy. But in any event, it is clear that under Tennessee law the tort of false light is a kind (even if the only kind) of invasion-of-privacy tort.

7

and discussed in *West*). In short, *West* makes plain that "false light claims" are "false light invasion of privacy claims," and neither *West* (nor anything else whatsoever, as far as the Court is aware) suggests that there is any kind of "false light claim" that for some reason is *not* an invasion of privacy claim.

Since *West*, Tennessee courts have continued to find that a false light claim is a type of "invasion of privacy" claim.[5] *See e.g.*, *Davis v. Covenant Presbyterian Church*, No. M2013-02273-COA-R3CV, 2014 WL 2895898, at *4 (Tenn. Ct. App. June 23, 2014); *see also Milligan v. United States*, 644 F. Supp. 2d 1020, 1020, 1046-47 (M.D. Tenn. 2009), *aff'd*, 670 F.3d 686 (6th Cir. 2012) (characterizing tort claim brought against Defendant Metro, and its co-defendants in that case, as one for "false light invasion of privacy," then referring to it alternatively as one for "invasion of privacy" before granting summary judgment to Defendant Metro on the grounds that the GTLA afford it immunity from claims of, *inter alia*, invasion of privacy).

Tennessee courts have also indicated more specifically that the "invasion of right of privacy" as referenced in Subsection (2) includes a false light claim.[6] *Fitzgerald v. Hickman Cty.*

---

[5] Plaintiff argues that if the legislature intended to include false light as an exception, it would have amended the statute after *West*. (Doc. No. 27 at 6). The Court finds it just as likely that the legislature believed "invasion of privacy" to be sufficient precisely because the term already encompasses a false light claim, as noted herein.

[6] Plaintiff seems to argue that since the appropriate standard of fault for a private plaintiff's false light claim regarding a matter of private concern is negligence, false light cannot be included in the list of exceptions in Subsection (2). (Doc. No. 27 at 4). Though nothing in the text of Subsection (2) limits the list contained therein to intentional torts, courts regularly reference Subsection (2) as being "the intentional tort exception" to the GTLA. *E.g.*, *Limbaugh*, 59 S.W.3d at 81; *Fitzgerald*, 2018 WL 1634111, at *5. From this informal moniker for Subsection (2), Plaintiff seems to infer that if a tort can (at least sometimes) be established by a showing of mere negligence rather than intentional tortious conduct, it cannot be included in Subsection (2). But in *West*, the Tennessee Supreme Court reiterated that negligence is the fault standard for certain defamation (libel and slander) claims brought by private plaintiffs, 53 S.W.3d at 648, and yet slander and libel are specifically listed in Subsection (2)'s exceptions-to-the-exception to sovereign immunity. *See* Tenn. Code Ann. § 29-20-205. Since Subsection (2) undeniably includes certain torts (libel and

8

*Gov't*, No. M201700565COAR3CV, 2018 WL 1634111, at *5 (Tenn. Ct. App. Apr. 4, 2018) ("[S]everal of the claims against [the county defendant] clearly fall within the 'intentional tort exception' to the immunity waiver [in the GTLA], specifically Appellant's claims for violations of due process, intentional infliction of emotional distress, and the claims for invasion of privacy, both intrusion on seclusion and false light."); *Carroll v. Morgan Cty. Bd. of Educ.*, No. E201700038COAR3CV, 2017 WL 5712903, at *1 (Tenn. Ct. App. Nov. 28, 2017) (affirming trial court judgment which held that "plaintiff's common law actions and claims for damage to reputation and false light are variations of invasion of right of privacy claims, for which immunity has not been lifted under [the GTLA] and so should be dismissed"). Plaintiff has pointed the Court to no case law in Tennessee holding that the GTLA does not include a false light claim within the umbrella of "invasion of privacy." The Court therefore finds that Defendant Metro has immunity from the false light claim under the GTLA.[7]

---

slander) that can be satisfied by mere negligence in some cases, the fact that false light claims can be established by mere negligence in some cases would not preclude false light claims from being encompassed within Subsection (2).

[7] The Court pauses to note how it likely would have proceeded if it had found that false light claims were not encompassed within "invasion of privacy" as used in Subsection (2), such that Plaintiff's false light claim survived despite Defendant Metro's argument for sovereign immunity. In that event, the Court likely would have declined to exercise supplemental jurisdiction over the state law false light claim after dismissing the Section 1983 claims against Defendant Metro. "[T]here is a 'strong presumption' in favor of declining to exercise jurisdiction over supplemental state-law claims after dismissing federal anchor claims under Rule 12(b)(6)." *Martinez v. City of Cleveland*, 700 F. App'x 521, 523 (6th Cir. 2017). Courts have regularly declined to exercise supplemental jurisdiction over state law claims involving the GTLA because Tenn. Code Ann. § 29-20-307 provides the circuit courts with exclusive original jurisdiction. *See Gregory v. Shelby Cty., Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000), *abrogated in part on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S. Ct. 1835, 149 L.Ed.2d 855 (2001) ("In this instance, the Tennessee legislature expressed a clear preference that [GTLA] claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction."); *Larson v. City of Algood, Tennessee*, 390 F. Supp. 3d 874, 891 (M.D. Tenn. 2019), *aff'd sub nom. Medlin v. City of Algood, Tennessee*, 814 F. App'x 7 (6th Cir. 2020) (declining to exercise supplemental jurisdiction and quoting

9

Case 3:20-cv-00402   Document 36   Filed 11/12/20   Page 9 of 10 PageID #: 149

For the reasons discussed, the Court will grant Defendant Metro's Motion as to the false light claim against it.

## CONCLUSION

For the reasons discussed, the Court will grant Defendant Metro's Motion. Both counts against Defendant Metro will be dismissed.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

*Gregory*); *P.G. by & through R.G. v. Rutherford Cty. Bd. of Educ.*, 313 F. Supp. 3d 891, 906 (M.D. Tenn. 2018) (same).